644

GULF-PUERTO RICO LINES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1281-69.   Filed February 11, 1974.

*John W. McConnell, Jr.*, for the petitioner.
*Frank Simmons*, for the respondent.

## OPINION

STERRETT, *Judge:* The Commissioner determined deficiencies in the petitioner's Federal income taxes as follows:

| Year | Deficiency | Year | Deficiency |
|------|-----------|------|-----------|
| 1958 | $7,125.89 | 1961 | $105,121.66 |
| 1959 | 125,658.60 | 1962 | 61,544.72 |
| 1960 | 134,859.41 | 1963 | 12,154.04 |

Some of the issues have been settled, leaving the following issues for our consideration:

(1) Whether the petitioner may deduct from its gross income from sources within the United States any portion of income taxes paid with respect to said income to Puerto Rico for the years 1959 through 1963.

(2) Whether petitioner is entitled to an offset or credit under the authority of Rev. Proc. 64–54, 1964–2 C.B. 1008, against additional United States income taxes resulting from any deficiencies found by this Court for any of the years in issue.

All of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioner Gulf-Puerto Rico Lines, Inc., is a corporation organized under the laws of the Commonwealth of Puerto Rico with its principal place of business during the years in issue and at the time of the filing of the petition herein at San Juan, P.R. During the years at issue petitioner was a resident foreign corporation for United States income tax purposes. Petitioner filed its United States corporation income tax returns for the years 1958 through 1963 with the district director of internal revenue at Birmingham, Ala.

The petitioner was incorporated in 1940 under the name Waterman Dock Co. Its name was changed in 1958 to Waterman Steamship Corp. of Puerto Rico and in 1965 to Gulf-Puerto Rico Lines, Inc. Petitioner operated a steamship terminal at San Juan, P.R., and smaller terminals at Ponce and Mayaguez, P.R. Prior to 1958 petitioner's operations and business were conducted entirely in Puerto Rico and consisted of stevedoring services, terminal services, agency and husbanding services for vessels engaged in the transportation of cargo between ports in Puerto Rico and ports elsewhere.

Beginning in 1958 petitioner took over from its parent, Waterman Steamship Corp., the operation of the Gulf-Puerto Rico ocean transportation service. This service consisted of the operation of vessels for the carriage of cargo between ports on the United States gulf coast and in Puerto Rico. Petitioner continued the operation of the Gulf-Puerto Rico service and its stevedoring, terminal, and agency and husbanding services throughout the years 1958 through 1966.

Petitioner's first United States income tax return was filed for the year 1958, the year in which it initiated its own steamship service between points in the United States and points outside the United States. The elements, computations, and steps used in determining petitioner's taxable net income attributable to sources within the United States on its return for that year were the same as for the years 1959 through 1962, including deduction of a ratable part of payments for Puerto Rico income taxes. This was not disputed by respondent.

Petitioner during the years in issue received no income from sources within countries other than the United States and Puerto Rico.

With respect to the years in issue, the petitioner submitted schedules attached to its returns of its income and deductions which may be summarized as follows, excluding any deduction for income taxes paid to Puerto Rico.

| Year | Source | Outside U.S. | Allocation of transportation business | | Total subject to taxation |
| --- | --- | --- | --- | --- | --- |
| | | | Without U.S. | Within U.S. | In Puerto Rico |
| 1959 | Gross receipts | $1,634,241.25 | $4,647,182.79 | $2,620,854.10 | $8,902,278.14 |
| | Total income | 602,751.45 | 654,593.54 | 369,394.85 | 1,626,739.84 |
| | Taxable income | 602,751.45 | 359,226.15 | 221,932.57 | 1,183,910.17 |
| 1960 | Gross receipts | 1,620,723.22 | 4,957,105.19 | 2,942,644.03 | 9,520,472.44 |
| | Total income | 590,104.41 | 567,165.79 | 336,549.91 | 1,493,820.11 |
| | Taxable income | 590,104.41 | 266,945.49 | 177,296.23 | 1,034,346.13 |
| 1961 | Gross receipts | 1,761,828.72 | 5,283,917.84 | 3,088,501.93 | 10,134,248.49 |
| | Total income | 667,652.23 | 424,111.04 | 247,913.29 | 1,339,676.56 |
| | Taxable income | 667,652.23 | 125,861.02 | 93,136.77 | 886,650.02 |
| 1962 | Gross receipts | 2,214,394.71 | 5,678,091.70 | 3,083,043.47 | 10,975,529.88 |
| | Total income | 531,624.66 | 412,848.02 | 224,250.57 | 1,168,723.25 |
| | Taxable income | 531,624.66 | 44,808.01 | 38,680.45 | 615,113.12 |
| 1963 | Gross receipts | 2,580,502.96 | 6,150,560.64 | 3,052,732.25 | 11,783,795.85 |
| | Total income | 614,415.28 | 459,634.85 | (9,303.22) | 1,064,746.91 |
| | Taxable income | 434,563.97 | 30,995.54 | (222,051.48) | 243,508.03 |

Petitioner, as a Puerto Rican corporation, paid income taxes to Puerto Rico as required by the laws of the latter for the years in issue in this proceeding. The income tax law of Puerto Rico is based almost entirely on the United States Internal Revenue Code of 1939. Under it petitioner was subject to tax by Puerto Rico on its total gross income less allowable deductions and had an option to take either as a deduction against its gross income or as a credit (subject to certain limitations) against its Puerto Rico income taxes the amount of any income taxes paid or accrued to the United States.

During the years 1958, 1959, and 1960 petitioner took a computed credit against the income taxes due to the Commonwealth of Puerto Rico with respect to a portion of its United States income tax paid in those years. For the years 1961, 1962, and 1963 petitioner reported no taxable income to the United States, paid no United States income tax, and claimed no deduction from income subject to, or credit against, Puerto Rico income tax with respect to United States income tax. All the years at issue in this proceeding are closed insofar as Puerto Rico income taxes are concerned and petitioner may not claim an additional credit against its Puerto Rico income taxes or a deduction against its gross income for Puerto Rico income tax purposes for any deficiency, if any, levied and paid in this proceeding.

On December 19, 1968, respondent issued his notice of deficiency, setting out the deficiencies in United States income taxes as determined by the Commissioner.

Under the laws of Puerto Rico petitioner was subject to a normal tax and surtax on its gross income minus allowable deductions.[1] The

---

[1] P.R. Laws Ann. tit. 13 :

Sec. 3013. *Normal tax on corporations and partnerships.*

(a) *Definition of Normal-Tax Net Income.*—For the purposes of this subtitle, the term "normal-tax net income", when used with respect to corporations * * * means the net income minus the credit for dividends * * * as provided in section 3026(a) of this title.

(b) *Imposition of Tax.*—There shall be levied, collected, and paid for each taxable

Income Tax Act of 1954 construes gross income broadly and includes "income derived from any source whatever." [2] Thus the income petitioner earned from United States sources was includable in petitioner's gross income.

In addition to allowing the petitioner all normal deductions associated with operating its business, in an apparent effort to alleviate the hardship of double taxation, Puerto Rico provides either a deduction or a credit for all income, war-profit, and excess-profit taxes imposed by the United States or any foreign country. [3]

---

year upon the normal-tax income of every corporation * * * a tax of 20 percentum of the normal-tax net income * * *

Sec. 3015. *Surtax on corporations and partnerships.*

(a) *Surtax Net Income.*—For the purposes of this subtitle, the term "surtax net income", when used with respect to corporations * * * means the normal-tax net income minus the credits provided in section 3026(b) of this title.

(b) *Imposition of Tax.*—There shall be levied, collected, and paid for each taxable year upon the surtax net income of every corporation * * * a surtax as follows:

(1) Upon a surtax net income not over $25,000 there shall be no surtax.

(2) Upon a surtax net income over $25,000, but not over $50,000, 5 per centum of the amount of the surtax net income over $25,000.

(3) Upon a surtax net income over $50,000 but not over $75,000, $1,250, plus 10 per centum of the amount of the surtax net income over $50,000.

(4) Upon a surtax net income over $75,000, but not over $100,000, $3,750, plus 15 per centum of the amount of the surtax net income over $75,000.

(5) Upon a surtax net income over $100,000, $7,500, plus 20 per centum of the amount of the surtax net income over $100,000.

Sec. 3021. *Net income.*

*Definition.*—"Net income" means the gross income computed in accordance with section 3022 of this title less the deductions allowed by section 3023 of this title.

Sec. 3026. *Credits of corporations and partnerships.*

In the case of a corporation * * * the following credits shall be allowed to the extent provided in the various sections imposing tax—

* * * * * * *

(b) *Credits for Surtax.*—

(1) The amount of the normal tax levied by section 3013(b) of this title; and

(2) 5 per centum of the normal tax net income as defined by section 3013(a) of this title.

[2] Sec. 3022. *Gross income.*

(a) *General Definition.*—"Gross Income" includes gains, profits, and income derived from * * * trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the possession or use of or interest in such property; also from interest, rent, dividends, partnership profits, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.

[3] Sec. 3023. *Deductions from gross income.*

In computing net income there shall be allowed as deductions:

* * * * * * *

(c) *Taxes Generally.*—Taxes paid or accrued within the taxable year, except—

* * * * * * *

(2) Income, war-profits and excess-profits taxes imposed by the authority of the United States, * * * if the taxpayer chooses to take to any extent the benefits of section 3131 of this title; * * *

Sec. 3031. *Taxes of the United States, possessions of the United States, and foreign countries.*

648

As a foreign corporation with income from sources within the United States, the petitioner was subject to taxation in the United States as provided in section 882, which prior to amendment by the Foreign Investors Act of 1966 and as applicable to the years here in question, read as follows:

SEC. 882(a). IMPOSITION OF TAX.—A foreign corporation engaged in trade or business within the United States shall be taxable as provided in section 11.

(b) GROSS INCOME.—In the case of a foreign corporation, gross income includes only the gross income from sources within the United States.

(c) ALLOWANCE OF DEDUCTIONS AND CREDITS.—

\*         \*         \*         \*         \*         \*         \*

(2) ALLOCATION OF DEDUCTIONS.—In the case of a foreign corporation the *deductions shall be allowed only if and to the extent that they are connected with income from sources within the United States;* and the proper apportionment and allocation of the deductions with respect to sources within and without the United States shall be determined as provided in part I, under regulations prescribed by the Secretary or his delegate. [Emphasis added.]

Section 164(a)(3) permits a deduction for taxes in the following terms:

SEC. 164. TAXES.

(a) GENERAL RULE.—Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued:

\*         \*         \*         \*         \*         \*         \*

(3) State and local, and foreign, income, war profits, and excess profits taxes.

The initial issue we must decide in the instant case is whether the petitioner was entitled to deduct a portion of the income taxes it paid

The amount of income, war-profits, and excess-profits taxes imposed by the United States, \* \* \* shall be allowed as a credit against the tax, to the extent provided in section 3131 of this title.

Sec. 3131. *Taxes of the United States, possessions of the United States, and foreign countries.*

(a) *Allowance of Credit.*—If the taxpayer chooses to have the benefits of this section, the tax imposed by this subtitle, \* \* \* shall be credited with:

(1) Citizens and domestic corporations.—In the case \* \* \* of a domestic corporation or partnership, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to the United States \* \* \*

\*         \*         \*         \*         \*         \*         \*

Such choice may be made or changed at any time prior to the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this subtitle.

(b) *Limit on Credit.*—The amount of the credit taken under this section shall be subject to each of the following limitations:

(1) The amount of the credit in respect of the tax paid or accrued to any country shall not exceed, \* \* \* in the case of a corporation \* \* \* the same proportion of the tax against which such credit is taken, which the taxpayer's normal-tax net income from sources within such country bears to its entire normal-tax net income for the same taxable year; and

(2) The total amount of the credit shall not exceed \* \* \* in the case of a corporation \* \* \* the same proportion of the tax against which such credit is taken, which the taxpayer's normal-tax net income from sources without Puerto Rico bears to its entire normal-tax net income for the same taxable year \* \* \*

to Puerto Rico in determining its taxable income in the United States. While section 164(a)(3) provides for a deduction for foreign income taxes, the deduction is limited by the provisions of section 882(c)(2), in that it must be "connected with income from sources within the United States."

For the years 1959 and 1960 petitioner's United States corporation income tax returns showed tax due in the amounts of $42,544.33 and $24,202. In arriving at these amounts, petitioner deducted from the taxable income allocated to United States sources shown in the chart previously set forth the amounts of $129,539.63 and $129,177, respectively, as "Allocated Portion Puerto Rico Income Tax." For the years 1961 through 1963 the petitioner's tax returns showed no taxable income, after having deducted $106,840.41, $71,373.82, and $19,782.73, respectively, in the same manner.

Petitioner filed corporation income tax returns for the years 1959 through 1963 with the Commonwealth of Puerto Rico. In accordance with section 3131 petitioner took a credit against its Puerto Rico income tax for its United States income tax paid in 1959 and 1960. Because petitioner concluded that its United States tax liability was zero for the years 1961, 1962, and 1963, no credit was available or claimed.

The basis for such actions, according to the petitioner, lies in the fact that gross income in Puerto Rico includes income from all sources including the United States source income. Since the Puerto Rico taxing statute does not permit the deduction of all United States source income, but rather allows a credit for United States taxes actually paid, it can be said that a portion of the taxes it pays to Puerto Rico is connected with income from sources within the United States.

We are troubled by the rationale behind the deductions petitioner took on its United States income tax returns. Nevertheless there is no doubt that a portion of the taxes it paid to the Commonwealth of Puerto Rico in all the years in issue except 1963 was connected with income from sources within the United States.

Because the Income Tax Act of 1954 of Puerto Rico is substantially the same as the Internal Revenue Code of 1939, all of the income and deductions reported on petitioner's United States tax returns were identically reported on the petitioner's returns filed with the Commonwealth of Puerto Rico. In this perhaps unique situation, we are able to see precisely how petitioner's United States source income affected its Puerto Rico tax liability.

Puerto Rico has chosen a tax credit, similar to the foreign tax credit available under the provisions of section 901, as the method best able to

alleviate its residents from the hardship of double taxation.[4] For the years in issue, the United States imposed a higher rate of taxation than did Puerto Rico. Sec. 11, I.R.C. 1954; secs. 3013, 3021, and 3026, Income Tax Act of 1954 of Puerto Rico (see fn. 1).[5] Had petitioner taken the full tax credit available under the Puerto Rico taxing statute, its United States source income would not have been burdened by any taxation in Puerto Rico.[6] The net result, as we think the credit was designed, would have been to tax United States source income once in the United States and the taxation of Puerto Rico source income once in Puerto Rico.

Unfortunately this case has been made more difficult because the petitioner took less than a full credit during the years in issue by deducting concurrently an amount it considered to be its ratable share of Puerto Rico taxes paid on account of United States source income. Because petitioner's United States tax liability was reduced, the credit available in Puerto Rico was reduced. Under these circumstances, or where the rate of taxation in the foreign country is higher than the tax rate of the United States, the deduction for foreign taxes paid on account of United States source income and the credit available against taxes paid in the foreign country become interdependent.[7] By using an algebraic formula to determine the above two variables, petitioner paid lower taxes in the United States and consequently higher taxes in Puerto Rico.

While we must stress that the petitioner has made complex a situation that should normally be quite simple, nevertheless it does not change the demonstrable fact that for the years 1959, 1960, 1961, and 1962, the petitioner paid some taxes in Puerto Rico that were "connected with income from sources within the United States." The fact that petitioner could have availed itself more fully of a provision (for a credit) of the Puerto Rico income tax laws to eliminate completely any burden of that country's income tax on United States source income

---

[4] To shed some light on why Puerto Rico may have enacted such a credit, we look to the legislative history of sec. 901 which seems to be analogous : "With the corresponding high rates imposed by certain foreign countries the taxes levied in such countries in addition to the taxes levied in the United States upon citizens of the United States place a very severe burden upon such citizens." H. Rept. No. 767, 65th Cong., 2d Sess. (1918).

[5] Indeed during 1959 and 1960 petitioner paid taxes in the United States on relatively low taxable income at the effective rates of 46.05 percent and 42.37 percent, respectively. During the same years, based on taxable income of well over a million dollars, the petitioner paid taxes in Puerto Rico at the effective rates of 36.64 percent and 35.48 percent, respectively.

[6] For example, suppose an effective United States tax rate of 40 percent and a rate in Puerto Rico of 30 percent. If X, a corporation organized in Puerto Rico has $100,000 United States source taxable income and $100,000 Puerto Rico source taxable income, it will pay a tax of $40,000 in the United States. But because of a tax credit limited to Puerto Rico rates, on $200,000 taxable income, it will pay only $30,000 in Puerto Rico. If X were taxed solely on its Puerto Rico income in Puerto Rico, the tax would still remain $30,000.

[7] See, for example, Rev. Rul. 55–532, 1955–2 C.B. 592.

is not a proper concern of the United States taxing authorities. The statute does not purport to authorize the respondent to plumb for the reason that the requisite "connection" exists. In fact except for the happenstance in the instant case that the tax laws of the country of incorporation are based upon United States laws, the respondent would face an unreasonable administrative burden, beyond its necessary expertise, to make a determination whether the tax burden was in all events necessary. Section 164(a)(3) refers only to foreign income taxes paid or accrued during the taxable year. Such language precludes a further determination in this instance that the taxes in question need not have been paid.

Rather than use the foreign tax credit mechanism provided by Puerto Rico to eliminate petitioner's United States source income from taxation in Puerto Rico, petitioner obviously chose to manipulate the tax credit of Puerto Rico and the deduction afforded by section 164(a)(3) to secure a tax savings. Generally speaking a credit against taxes is superior to a deduction. Here, however, petitioner seized on certain ambiguous and complex language in the regulations promulgated under section 863, which provide guidelines for allocating certain general expenses including foreign income taxes for businesses partly within and partly without the United States, to gain deductions (perhaps not anticipated) for its foreign taxes paid.

The eccentric result is apparent. The following chart shows petitioner's taxable income from United States sources prior to deduction for "allocation of Puerto Rico income tax," and the deduction taken for such allocations:

| Year | United States taxable income prior to deduction | Deduction taken for allocated Puerto Rico tax |
|---|---|---|
| 1959 | $221,932.57 | $129,539.63 |
| 1960 | 177,296.23 | 120,177.00 |
| 1961 | 93,136.77 | 106,840.41 |
| 1962 | 38,680.45 | 71,373.82 |
| 1963 | (222,051.48) | 19,782.73 |

By taking the deductions set forth above petitioner achieved an overall tax savings.[8]

During 1963 the petitioner's taxable income from United States sources, prior to deduction for foreign taxes, showed a net deficit of

---

[8] The petitioner is able to secure tax savings because Puerto Rico has a lower tax rate than the United States and limits the credit for United States taxes paid to its effective rate of taxation. Thus any reduction in United States taxes, caused by a deduction for foreign taxes allegedly attributable to United States source income, will increase Puerto Rico tax liability by an amount equal to the ratio of Puerto Rico's tax rate over the United States tax rate (the limitation on the credit) times the amount of the reduction of the United States tax. The net effect is to decrease its *overall* tax liability by eliminating a portion of its income which because of the credit limitation remains subject to greater taxation in the United States.

$222,051.48.[9] This deficit, which was also reported on petitioner's income tax return for Puerto Rico, had the effect of reducing petitioner's taxable income from sources within Puerto Rico, $465,559.51, to $243,508.03 on which the petitioner paid taxes to the Commonwealth of Puerto Rico. It is therefore quite obvious that petitioner's income from United States sources could not have increased petitioner's Puerto Rico tax liability. On the contrary the losses incurred in petitioner's United States operation significantly reduced such tax liability. Thus we do not feel that the requisite connection exists to allow a reduction for 1963. See *Corporacion De Ventas De Salitre Y Yoda De Chile*, 44 B.T.A. 393, 407 (1941), reversed on another issue 130 F. 2d 141 (C.A. 2, 1942).

The parties have stipulated the amount of taxes which the petitioner is entitled to deduct for those years in which we determined that the necessary connection to United States sources existed. However for the sake of completeness we must note our disagreement with the petitioner's method for determining the portion of taxes paid in Puerto Rico because of a connection with United States source income.

Section 882(c)(2) states that "proper apportionment and allocation of the deductions with respect to sources within and without the United States shall be determined * * * under regulations prescribed by the Secretary or his delegate." The regulations under section 882 refer us first to section 1.873–1, which refers us ultimately, in the case of transportation services, to section 863(b) and the regulations prescribed thereunder. Section 1.863–4(f)(2), Income Tax Regs., states:

(2) *Interest and taxes.* Interest and income, war-profits, and excess profits taxes shall be excluded from the apportionment process, as indicated in paragraph (d) of this section; but, for the purpose of computing taxable income, there may be deducted from the gross income from sources within the United States, after the amount of such gross income has been determined, a ratable part of all interest deductible under section 163 and of all income, war-profits, and excess profits taxes deductible under section 164, paid or accrued in respect of the business of transportation service between points in the United States and points outside the United States. The ratable part shall ordinarily be based upon the ratio of gross income from sources within the United States to the total gross income from such transportation service.

---

[9] In making the determination of whether taxes were paid in Puerto Rico with respect to United States source income we have looked to the petitioner's income tax returns as filed with the United States and Puerto Rico authorities. The parties have stipulated that the proper United States taxable income before deduction for Puerto Rico taxes for the years 1959 through 1963 is $248,243.28, $212,625.85, $141,979.36, $76,940.90, and $43,160.69, respectively. Although the stipulation indicates that the proper taxable income for 1963 prior to deduction for Puerto Rico taxes is $43,160.69, as the result of certain agreed-to adjustments, rather than a deficit of $222,051.48 as reported on the return, we are not able to make the positive determination that taxes were in fact *paid* in Puerto Rico on account of United States source income. Since the rather ambiguous stipulation fails to indicate that the $43,160.69 was in fact subject to taxation in Puerto Rico, we will not base our decision on an assumption as to what occurred that is not supported in the record and appears contrary to the returns as filed with the respective countries.

Petitioner then attempted to allocate the taxes he paid in Puerto Rico solely on the basis of gross income from within the United States and gross income from without the United States.[10] In this manner petitioner was able to allocate taxes paid in Puerto Rico to United States income which bore little relationship to the reality of the situation.

While the above regulation may be vital where the taxing statutes of the two countries bear little similarity, where the taxing statutes function identically, there is no need to estimate this particular expense, since we may determine exactly how much tax is paid on account of United States source income. In the instant case, the taxes petitioner incurred in Puerto Rico because of United States source income could be no greater than the relationship petitioner's United States source taxable income bore to its total taxable income in Puerto Rico.

Section 863 (b) states:

(b) INCOME PARTLY FROM WITHIN AND PARTLY FROM WITHOUT THE UNITED STATES.—In the case of gross income derived from sources partly within and partly without the United States, the taxable income may first be computed by deducting the expenses, losses, or other deductions apportioned or allocated thereto and a ratable part of any expenses, losses, or other deductions which cannot definitely be allocated to some item or class of gross income * * *

Since we can determine precisely the amount of tax liability incurred because of United States source gross income, which in this instance necessarily related to taxable income from both United States and Puerto Rico sources, it was not necessary to use the processes or formulae of general apportionment outlined in section 1.863–4(f)(2). Section 863 and the regulations thereunder were written with the intention of providing a convenient method for allocating gross income and expenses which could not precisely be said to emanate from within or without the United States. We are confident that they were never intended to be abused in the manner petitioner sought.

However, having found the requisite connection of Puerto Rico taxes to United States income for the taxable years 1959, 1960, 1961, and 1962, we hold that petitioner is entitled to deduct on its United States returns the stipulated portion of its tax liability paid to the Commonwealth of Puerto Rico. The requisite connection not having been found for the taxable year 1963, the petitioner is not entitled to deduct a portion of the taxes it paid to the Commonwealth of Puerto Rico for that year.

---

[10] Sec. 863(b), which deems transportation between the United States and other countries to be partly within and partly without the United States, has reference only to such business. In the instant case petitioner allocated a portion of all its Puerto Rico taxes to United States source income, even though a major source of its income in Puerto Rico came from its stevedoring, terminal and husbanding activities, not connected with its transportation business. Further, petitioner in making the allocation used gross income figures for its transportation business but net income figures for its other non-United States businesses in all years but 1963, thereby increasing and greatly distorting the taxes attributable to its transportation business.

The last issue we face is whether the petitioner is entitled to an offset or credit under the authority of Rev. Proc. 64–54, 1964–2 C.B. 1008, against the additional taxes resulting from our opinion herein.[11] Because petitioner's United States tax liability may be greater than shown on its tax returns for the years in issue, petitioner would have been entitled to a greater tax credit against its tax liability in Puerto Rico. Rev. Proc. 64–54 is directed at alleviating "economic double taxation" in cases where allocations under section 482 would decrease foreign tax liability were it not for closed years, and provides that the Commissioner will grant taxpayers an offset against their United States tax liability equal to the amount their foreign taxes exceeded what was actually shown to be due.

While the situations may be somewhat analogous, we are reluctant without some foundation in the Code or the regulations to grant the relief authorized by Rev. Proc. 64–54, unless the case is decided under the provisions of section 482. Such relief is administrative, and therefore within the discretion of the respondent, and not this Court, to grant.

*Decision will be entered under Rule 155.*

---

[11] It appears that at least for 1959 and 1960 there will be deficiencies since the parties have stipulated that the deductions for taxes paid to Puerto Rico on United States source income, should petitioner prevail in theory, are less than that claimed on the United States tax returns.